We'll now hear Hite v. Evans. The clerk gave me a note on this, and I'll read it to you. Received notice. This is apparently a call from one of the attorneys. Received notice, but forgot to calendar. He is in San Diego and can be here in three hours. He is feeling a bit mortified. Please advise so that I can call him back. My thought is we set the date, that's it, but I don't know if my colleagues want it. I think when I've had this happen before, I think that Ms. Vifold has the right to make the argument, and it's as if the other side agreed to submit its argument on the briefs. That's what we've always done on panels I've been on, too. I'm perfectly happy to hear her argument. So you're going to get one argument, basically. Who didn't show up? It looks like the deputy attorney general. You know, I understand I'm not, you know, we've all felt that. More often than not. You know, my office is in Pasadena. Who are you? What's your name, and who do you represent? I'm sorry, Your Honor. Verna Vifold on behalf of the appellant Gerard Hite. Okay, well, you get to argue it, and the AP does not get to be heard. Tough for him. Okay. All right, then. Here we go. He's lucky he's not in private practice making a mistake like that. Let's see, what case is this? Oh, yes. Okay, no. This is the Home Depot, and I thought it sounds a lot like statutory tolling. But the issue in this case is really is Mr. Hite entitled to gap or statutory tolling based on the petition, the handwritten petition that he mailed to the California Supreme Court on January 16th, 2004, which he then resubmitted attached to the form that the clerk told him, sent to him a year later on January the 13th, 2005. We know now for sure that he did, in fact, send that same form. It looked to me from reading both the magistrate judge's report and the district judge's order that they questioned whether or not there actually was a 2004 filing. Can you enlighten us on that? Yes, I think that they overlooked, I think both the district court, the magistrate judge's report, and the district court, as well as the respondent, overlooked that letter from Deputy Clerk Robinson at the California Supreme Court, which he wrote to him on January the 13th, 2005, and that's at the excerpts page 153. But the problem is the letter doesn't identify anything other than I'm returning papers to you. So we don't know which papers the deputy clerk was sending back, do we? It doesn't identify specifically, but I think that we – I think that it appears that, in fact – There doesn't seem to be any other possible paper, though. Pardon me? There doesn't seem to be any other possible paper than his earlier one. I seem to recall something additional. It says, it appears you want to file a petition for habeas corpus. Right. I think the reason that we can assume that what Mr. Hite sent back attached to the form was, in fact, what he earlier mailed, because the – because he didn't title it petition for writ of habeas corpus. He called it a petition for review. And because on – as you look on the – at the record on page 249, because it was handwritten, he does cross out what looks like – I looked at it closely, and what he says he did was he crossed out the original date that he had signed it, and then he put in 1-2305, and so – and it was sent back attached to the form. And so it appears to me that he did, in fact, that this is what he sent in. And the magistrate also made a point of saying, well, he didn't – when they asked him if he had filed anything else, he didn't mention anything, but I can understand why he didn't, because it was sent back to him. So I – and like if we go to the Huizar v. Carey case, I mean, there's nothing to contradict the fact that this, in fact, was what he sent back. But I thought there were three things that were mailed from the prison in January, and we don't know what it was. We don't know what they were. We don't know if it included – if one of the three was this or not. We don't know. So I guess the problem I'm having, and the basis for my confusion, is we have what amounts to a factual finding, I guess, by the magistrate judge and the district judge, that he hasn't established that this is, in fact, what he sent in 2004. And on that basis, they question whether he had been diligent in pursuing his habeas claim, and therefore he wasn't entitled to statutory tolling. Well, I think that the reason that the magistrate found that he hadn't been diligent was because the magistrate never mentioned the letter from the California Supreme Court, which was attached as an exhibit to the opposition to the motion to dismiss. And I note also that Mr. Hite's handwritten petition is unlike in that case that just came down, Zepeda v. Walker, where it wasn't, you know, the defect, whatever, and this was verified by Mr. Hite. And we don't have any evidence to contradict that. And in Huizar v. Carey, what's interesting about that case is that the petition that he allegedly sent in was never found. I mean, it was in — and he claimed to have written several letters. He claimed that his sister then sent in, you know, a certified copy, and that was never found. And then ultimately, when this Court sent it back down, the district court judge found that there was no evidence to disprove that Mr. Huizar did what he said he did. So on that basis, I think that this is, in fact, a mailing. Assuming we accept that, I have two questions. Why should there be tolling? I mean, we waited for a year to, you know, to follow up. And then the second one only reveals my ignorance of California procedures since I'm in New York. What difference does it all make? I thought in California there is no statute of limitations. So even if we say January 05 was the date, isn't he timely? Well, in California — Is this a question I want to ask the other side that's not here? Well, in California — you know, you can ask me. California, they — California follows the mailbox rule, just like Houston v. Lack. That's the case of In re Jordan. They follow the mailbox rule. There was something mailed. It is verified by the prison mail log and by the letter that was written by the California Supreme Court clerk. And in a way — okay, he didn't file it on the form. She sent him the form. He sends it back, assuming that she told him to attach his original pleading, which it appears to me that he, in fact, did do that. Why isn't that an amendment to — or an amended pleading? And why isn't that under California's mailbox rule? Well, before we get to the mailbox rule, I'm having problems under Artuse v. Bennett in trying to decide whether or not his petition was properly filed, where the rule clearly says it has to be on the form. The rule also says that a pro se can file — doesn't have to file on the form for good cause shown. So, you know, as I argued in my supplemental brief, I mean, there's nothing that says that you have to file a separate pleading that says, you know, this is the good cause for why I'm not filing it on the form. And that there — again, we don't — I mean, there are some facts that we probably don't have at this point because we don't know why he didn't have the form in the first place. It could have been that the prison didn't have any forms. They run out of them, you know. That's why I asked you the question earlier about how do we know what it was that he sent, because we've got this finding by the district court that he hasn't established what it was that he sent in January of 2004. And it wasn't until January of 2005 that he sent his petition with the form back to the California Supreme Court. And at that point, it is properly filed, I think, under our case law. Well, I think that the problem that we have is that there is a combination of things. We have the Weissauer v. Carey, the mailbox rule, the mailbox rule which is filed in California, the fact that it — the rule does not say it absolutely must be on this form or, you know, you're out of luck, buddy. That's what it says. But then it says there's an exemption if he can show good cause. And so now I'm focusing on good cause. The burden is on him to establish good cause. And if he can't prove that this was filed in January of 2004, there has to be some — under AEDPA, there's got to be something pending. Otherwise, the statute is churning, is it not? Well, I think that if the court is troubled by the fact that, you know, Mr. Hite's pleadings that he filed pro se in the district court assert that these are the pleadings that he filed, that he did, in fact, send another copy — I mean, because the thing is, is that this handwritten pleading that is attached to the form was lodged by the attorney general as the petition that he filed, you know, in 2005. But Mr. Hite then also submitted another copy of that saying, this is what I sent in. He did say that. Well, I understand. But then we've got finding — I think it's a finding. I'll go back and look at the language again. But I think we've got findings by both the magistrate judge and the district judge that we can't tell what it was that he filed. So, therefore, it leads me to conclude he hasn't met his burden of establishing good cause under the statute and that the EDPA clock was ticking this whole time, in which case when he finally got it in in January of 2005 on the right form, the 365 days had run out because, by my calculations, he's at 397. Well, I think that Mr. Hite then should have been afforded more of an opportunity to prove his case because there are all kinds of things. I mean, he could have gotten declarations from other inmates and jailhouse lawyers. He could have gotten declarations from his counselor or from other people at prison. Would the Supreme Court have kept copies of the papers? I'm sorry? Would the Supreme Court of California have kept copies of the papers that he filed before they nailed it back just so they have a record? I'm glad you asked me that. You know, and if I'm permitted to go a little bit out of the record, I would just say in good faith that had Mr. Hite been afforded an evidentiary hearing, I think he may have been able to prove up his case much better. As a lawyer, I do a lot of work in state court as well as in federal court. I have filed many petitions for review, unfortunately. It wasn't the other side filing the petitions for review, but at that very courthouse in the clerk's office of the California Supreme Court. And I know the clerk that wrote the letter. And I also so and there Mr. Hite may have been able to prove at an evidentiary hearing that there is a serious problem with the filing and the receipt of documents and the misplacement of documents and losing documents in that particular clerk's office. And there's a lot of tension between the San Francisco California clerk's office and this clerk's office in L.A., which is very small and only has two people working there and one other clerk besides Ms. Robinson. So there hasn't been enough of an opportunity for Mr. Hite to prove his – prove what, in fact, he did file and also to prove, in fact, if he's not ultimately entitled to statutory tolling, that he may be entitled to equitable tolling because why did the clerk wait an entire year to send him that form? And I can tell you from practicing, you know, and I do my own filing in many of these cases, it's not surprising that, you know, it may have been piles of stuff sat on the clerk's desk. There's lots of letters and pleadings from inmates that they have to try to figure out what they are. I have a little sympathy for me because I myself had to send my – in one case, a habeas, I sent the law clerk to the appellate division in New York and they didn't find the paper my law clerk did. So I can understand. And so – I really think that maybe the real issue here is that it really – I guess my sense is it should go back and there'd be some real hearing about what happened here. I think we should note the time. Probably ought to wrap it up if you haven't already. I have no rebuttal to my own arguments. But I do think that was what I was going to wrap up with. Thank you, Your Adversary. There's something I'd like to make clear on the record. I don't want the Assistant Attorney General to blame you for his not getting an argument. I want you to be able to tell him we never asked you whether we should do what he wanted us to do, which was to give him a phone call and interrupt our afternoons to give him another chance and all that. We never asked you. We just did what we usually do, which is you didn't show up. Tough. The other side gets to argue and you had your chance and you didn't show up for it. Well, I'll add to the record that I offered to submit and went ahead with the argument. But I just wanted to – my final statement was going to be that I do think that in the end that if the record is not as clear as it should be, that clearly it should go back for a development of the record and a hearing on these important issues. Thank you, Counsel. Thank you. Thank you very much. Good to see you again. All right. This court is now adjourned. Thank you.
judges: Trager, Kleinfeld, Tallman, Paez, Smith M.